OPINION
{¶ 1} This matter is before us on consolidated appeals from the Franklin County Court of Common Pleas, Probate Division. For the reasons that follow, we affirm, in part, and reverse, in part. *Page 2 
 {¶ 2} Deborah Clardy ("Clardy") and Robert Barnett ("Barnett") were married some time in approximately 1988. The two had three children together: Kiersten, Yhasmin, and Cameron. The two separated, and some time in approximately 1995, Barnett moved to West Virginia. No divorce proceedings were ever started, and Barnett was never ordered to pay child support for any of the children.
 {¶ 3} On May 29, 2003, Yhasmin Barnett-Clardy died from complications from an ectopic pregnancy. An estate was established on April 14, 2004 for litigation of medical malpractice claims, and Adam Rinehart was appointed administrator of the estate. The probate court signed a journal entry approving a contingent fee agreement between the estate and attorneys Simona Vourlis and Richard D. Topper, Jr. Ultimately, a settlement was reached whereby the defendants in the medical malpractice action agreed to pay $825,000. On March 29, 2006, an application was filed with the probate court seeking approval of the settlement and distribution of the proceeds. The application proposed to allocate 100% of the proceeds of the settlement to the estate's wrongful death claims, and 0% of the proceeds to survivorship claims. The application called for distribution, after payment of attorney fees and expenses, of $460,065.04 — $30,000 each to Yhasmin's brother, sister, two half-brothers, and two half-sisters, and the remainder to Clardy.[1]
The application proposed to distribute none of the proceeds to Barnett. A hearing on the application was scheduled for April 19, 2006.
 {¶ 4} On April 17, 2006, Barnett filed a motion seeking a continuance of the April 19 hearing and an objection to the application for approval of the settlement and distribution. On May 4, 2006, the attorneys for the estate, purporting to act for both the *Page 3 
estate and Clardy, filed a motion seeking an order finding that Barnett abandoned Yhasmin pursuant to R.C. 2125.02. Ultimately, the motion for a finding of abandonment and the application to approve distribution was heard before a magistrate.
 {¶ 5} At the hearing, Barnett stated that he did not pay child support because he had never been ordered to, but that over the years he would provide cash as needed to cover the children's expenses when he was asked to do so. He also testified that he did not see his children very often over the years, but that the children knew how to contact him if they needed to. Barnett also stated that he maintained communications with Kiersten and Cameron. Barnett also offered a school identification card he claimed Yhasmin had given him. The magistrate issued a decision finding that Barnett had abandoned Yhasmin for purposes of R.C. 2125.02
and was therefore not entitled to any of the proceeds from the wrongful death settlement. The magistrate also concluded that Cameron's share of the settlement proceeds should be increased from $30,000 to $40,000.
 {¶ 6} Barnett filed objections to the magistrate's decision and a request that the trial court rehear the case de novo. The bases for the objections were: (1) counsel that represented him at the magistrate's hearing was ineffective, thus depriving him of his rights; (2) Clardy should have been prevented from seeking to deprive him of his right to proceeds from the wrongful death settlement under the doctrines of waiver, estoppel, and marital privilege; (3) he suffered prejudice at the hearing before the magistrate as a result of the attorney representing the estate at the hearing having a conflict of interest; and (4) the decision to deprive him of his right to proceeds from the wrongful death settlement *Page 4 
constituted a violation of a fundamental right that should have been declared void as against public policy.
 {¶ 7} The trial court declined to hold a de novo hearing, but did hold a hearing for the purpose of taking additional evidence. At that hearing, Barnett offered evidence in the form of testimony from Kamal Ansari, the principal at Columbus Africentric High School, the school Yhasmin attended at the time of her death. Ansari testified that Barnett had attended a meeting regarding Cameron at the school within the year preceding Yhasmin's death, but could not recall whether Barnett had any contact with Yhasmin at that time.
 {¶ 8} Barnett also testified at that hearing, stating that he saw Yhasmin in the hallway at the school, but did not speak to her at that time, and repeated his testimony that Yhasmin gave him her school identification card when he was at the school for a later meeting. Barnett also attempted to offer evidence regarding an action filed in the Franklin County Municipal Court Environmental Division by the Columbus Health Department against Clardy arising from sanitary conditions at her house, claiming this was evidence of Clardy's motive to have a finding of abandonment made against him so she could use the wrongful death proceeds to address the conditions that were the subject of that action. The trial court sustained an objection regarding the admissibility of documents relating to the municipal court action.
 {¶ 9} The trial court sustained Barnett's objections to the magistrate's decision regarding abandonment. The trial court concluded that the evidence that Barnett took steps to maintain relationships with Kiersten and Cameron showed that he did not abandon his children as a group, concluding that Barnett could not maintain relationships with two of his children while abandoning the third. The court concluded, however, that *Page 5 
given Barnett's relatively low involvement in Yhasmin's life, Barnett was not entitled to more than a nominal amount of the proceeds. The court thus awarded Barnett 10% of the amount allocated to Clardy, or $26,986.63, and otherwise affirmed the allocations the magistrate made to Cameron, Kiersten, and Yhasmin's half-brothers and half-sisters.
 {¶ 10} Barnett's attorneys then filed a motion seeking payment of attorney fees and expenses incurred in defending the motion for a finding of abandonment, to be paid from the wrongful death proceeds. While that motion was pending, Clardy and the estate filed a notice of appeal. Barnett filed a motion to remand the case to the trial court for consideration of the motion for attorney fees and expenses, which we granted. The trial court held a hearing, after which it denied the motion for attorney fees and expenses. Barnett subsequently filed a notice seeking to update the attorney fees and expenses claimed, which was stricken by the trial court on the estate's motion.
 {¶ 11} Clardy and the estate allege a single assignment of error:
 THE TRIAL COURT'S DECISION THAT APPELLANTS, ESTATE OF YHASMIN BARNETT-CLARDY AND DEBORAH CLARDY, DID NOT PROVE THAT ROBERT BARNETT STATUTORILY ABANDONED HIS DAUGHTER, YHASMIN BARNETT-CLARDY, WAS NOT BASED ON COMPETENT, CREDIBLE EVIDENCE, SINCE THERE WAS NO EVIDENCE THAT ROBERT BARNETT CARED FOR AND PROVIDED MAINTENANCE OR SUPPORT FOR YHASMIN BARNETT-CLARDY THE YEAR BEFORE HER DEATH AS IS REQUIRED UNDER R.C. 2125.02(E).
 {¶ 12} Barnett alleges five assignments of error:
 ASSIGNMENT OF ERROR NO. 1
 Probate Court erred in excluding evidence of a prior inconsistent statement of Appellant. This entry is an admission against interest of his wife's pecuniary motive and bias to undermine any settlement to Appellee. The entry was relevant and probative evidence in the wrongful death allocation proceeding. *Page 6 
 ASSIGNMENT OF ERROR NO. 2
 Probate Court erred in only awarding pursuant to ORC husband (sic) 10% of his wife's award as being unconstitutional as applied and a denial of equal protection where the parties are married, and the Probate Court made a specific finding that the husband did not abandon his child.
 ASSIGNMENT OF ERROR NO. 3
 Probate Court erred in approving minor settlement to Cameron Clardy for more than statutory limit of $10,000.00 without notice to natural parent and father and a written waiver of the conflict of interest.
 ASSIGNMENT OF ERROR NO. 4
 Probate Court erred in denying cross-appellant attorney fees after finding in favor of cross-appellant in setting aside Order of Abandonment and where attorneys for the estate and Clardy did not disclose annuities purchased pursuant to a Confidential Settlement Agreement or dual concurrent representation in her municipal court action.
 ASSIGNMENT OF ERROR NO. 5
 Probate Court erred in denying Motion to Update Litigation Expenses and Costs for cross-appellant where he prevailed on setting aside a frivolous Motion for Abandonment.
 {¶ 13} R.C. 2125.02(A)(1) provides that actions for wrongful death "shall be brought * * * for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death * * *." The statute further provides that "[a] parent who abandoned a minor child who is the decedent shall not receive a benefit in a civil action for wrongful death[.]" R.C. 2125.02(G)(3) provides that a parent has abandoned a minor child for purposes of the statute when the parent "failed without justifiable cause to communicate with the minor, care for the minor, and provide for the maintenance or support of the minor as required by law or judicial decree for a period of at least one year immediately prior to the date of the death of the minor." *Page 7 
 {¶ 14} In briefing and during argument, the parties have disagreed regarding the proper manner in which to apply the three elements of abandonment identified in the statutory definition: (1) failure to communicate, (2) failure to provide care, and (3) failure to provide maintenance and support. Specifically, the parties argue about whether the use of the conjunctive "and" in the statute means that evidence that Barnett undertook any of the three actions set forth in the statute necessarily precludes a finding that he abandoned Yhasmin.
 {¶ 15} R.C. 2125.02(E)(2) specifically provides that the party seeking the order of abandonment has the burden of proving by a preponderance of the evidence that the abandonment occurred. Consequently, the estate and Clardy had the burden of proving that Barnett failed to take all three actions described in the statute in order to establish abandonment, and evidence that Barnett took any of the actions, if believed, would preclude a finding of abandonment. See In re Wrongful Death ofTurner (Nov. 25, 1998), Champaign App. No. 98 CA 2, 1998 Ohio App. LEXIS 5558.
 {¶ 16} In rejecting the magistrate's decision, the trial court did not specifically address the elements of abandonment separately, but apparently decided the issue based on a finding that Barnett did maintain some communications with his children. In reaching this decision, the trial court did not focus on Yhasmin individually, but instead focused on Clardy and Barnett's children as a group, finding that Barnett maintained a relationship with Yhasmin's brother and sister. The court concluded that it could not find "that Mr. Barnett could have a relationship with two of his children but effectively abandon another." *Page 8 
 {¶ 17} The trial court's focus on the children as a group was an erroneous application of the law. R.C. 2125.02 makes reference to whether the parent abandoned the "decedent," not any other children, and it is plausible that a parent could maintain a relationship with one child without doing so with another child, even if the children live together. The trial court's erroneous focus on the children as a group requires that we remand this matter for a new hearing. At that hearing, the focus must be on whether Barnett directed any communications at Yhasmin, provided care for Yhasmin, and provided maintenance and support as required by law for Yhasmin.
 {¶ 18} In their brief, the estate and Clardy specifically declined to argue that Barnett completely failed to communicate with Yhasmin during the last year of her life, conceding that there was a "sliver" of evidence presented to the trial court on that issue, while questioning the credibility of that evidence. However, the trial court in its decision did not address itself to any evidence regarding communication between Barnett and Yhasmin, and therefore did not make any determination regarding the credibility of that evidence. Consequently, this is an issue that must be addressed by the trial court on remand.
 {¶ 19} Therefore, we sustain the estate and Clardy's single assignment of error, and remand this case for additional proceedings. Having made this determination, it is necessary for us to decide what effect a remand of this case has on Barnett's five assignments of error. Barnett's second, fourth, and fifth assignments of error are all premised on the trial court's finding that Barnett did not abandon Yhasmin. Our vacation of the trial court's finding renders those assignments of error moot. *Page 9 
 {¶ 20} Barnett's first assignment of error involves an evidentiary ruling by the trial court. Generally, the decision whether to admit evidence is within the sound discretion of the trial court, and will not be disturbed absent an abuse of that discretion. Wightman v.Consolidated Rail Corp., 86 Ohio St.3d 431, 1999-Ohio-119,715 N.E.2d 546. Our decision to remand this matter for a new hearing renders any error that may have occurred in the original hearing moot as well.
 {¶ 21} Barnett's third assignment of error does not involve the finding of abandonment, but instead involves the magistrate's decision regarding the allocation of a portion of the wrongful death proceeds to Cameron Clardy. Barnett argues that Cameron could not have been awarded more than $10,000 without Barnett being given notice and approving of the award. This argument is based in part on the local rules of the probate court, including rules calling for appointment of a guardian when settling wrongful death claims of a minor, and in part on the fact that the payment to Cameron was to be made by way of an annuity that Barnett argues was not properly disclosed to the trial court.
 {¶ 22} Nothing in the record shows that Barnett ever made any objection regarding application of the local rules. Therefore, even assuming failure to follow the local rules cited by Barnett would provide a basis to nullify the award to Cameron, Barnett waived any error by failing to object. Furthermore, nothing in the record shows that Cameron's interests were not adequately protected in the absence of an appointed guardian. In fact, the magistrate increased the amount of the proceeds to be awarded to Cameron from the amount proposed in the initial application to approve the allocation, citing the need to more adequately protect his interests. Consequently, we overrule Barnett's third assignment of error. *Page 10 
 {¶ 23} Having sustained the estate and Clardy's assignment of error, overruled Barnett's third assignment of error, and overruled Barnett's first, second, fourth, and fifth assignments of error as moot, we hereby reverse the judgment of the trial court, and remand this matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 P. BRYANT and T. BRYANT, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The application was subsequently amended to reflect an amount after attorney fees and expenses of $459,866.33. *Page 1