OPINION
{¶ 1} Appellant, Robert Barnett, appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division. For the following reasons, we affirm.
 {¶ 2} On May 29, 2003, Yhasmin Barnett-Clardy died as a result of a ruptured ectopic pregnancy. In order to assert wrongful death and survivorship claims against Yhasmin's medical providers, Adam Rinehart applied for authority to administer Yhasmin's estate. The trial court appointed Rinehart administrator, and it authorized him *Page 2 
to enter into a contingent fee agreement with attorneys hired to represent the estate in the medical malpractice action.
 {¶ 3} Ultimately, Yhasmin's medical providers offered to settle the lawsuit against them for $825,000. On March 29, 2006, Rinehart applied to the trial court for approval of the settlement and his proposed distribution of the settlement proceeds. In the application, Rinehart requested that the trial court allocate all the settlement proceeds to the wrongful death claim and none to the survivorship claim. Of the $460,065.04 remaining after the payment of attorney fees and costs, Rinehart proposed that the trial court distribute $30,000 to each of Yhasmin's two siblings and four half-siblings. Rinehart proposed that the trial court distribute the remainder of the settlement proceeds — $280,065.05 — to Yhasmin's mother, Deborah Clardy.[1]
 {¶ 4} The trial court scheduled a hearing on the application to approve the settlement and distribution for April 19, 2006. Two days prior to the hearing, appellant and his mother moved to continue the hearing. As appellant later testified, he was unaware of the medical malpractice law suit and the proposed settlement until notice of the April 19, 2006 hearing arrived at his mother's house. The trial court granted appellant's motion and postponed the hearing.
 {¶ 5} When the application to approve the settlement and distribution came for hearing on June 21, 2006, attorneys for the estate, Clardy, and appellant presented the trial court with an agreed entry. The entry, later signed by and filed with the trial court, approved the $825,000 settlement offer and the payment of the attorney fees and costs *Page 3 
from the wrongful death proceeds. The entry also stated that the trial court would apportion the wrongful death proceeds among the beneficiaries after a hearing.
 {¶ 6} Meanwhile, on May 4, 2006, Rinehart and Clardy filed a motion requesting that the trial court find that appellant abandoned Yhasmin and, thus, could not receive any of the wrongful death proceeds. An evidentiary hearing on this motion as well as the matter of the distribution of the wrongful death proceeds occurred on August 10, 2006 before a magistrate. On September 19, 2006, the magistrate issued a decision in which she found that appellant had abandoned Yhasmin. Additionally, the magistrate recommended that Yhasmin's sister and half-siblings each receive $30,000 of the wrongful death proceeds, Yhasmin's brother receive $40,000, and Yhasmin's mother receive $269,866.33.
 {¶ 7} Appellant filed objections to the magistrate's decision and submitted additional evidence. On December 19, 2006, the trial court issued an entry overruling the magistrate's decision that appellant abandoned Yhasmin. Finding that a relationship existed between appellant and Yhasmin's siblings, the trial court reasoned that appellant could not have maintained a connection with two of his children while abandoning a third. However, given appellant's minimal role in Yhasmin's life, the trial court concluded that he deserved only a nominal amount of the wrongful death proceeds. The trial court thus allocated to appellant ten percent of Clardy's share of the wrongful death proceeds, or $26,986.63. Other than the distribution to appellant and the concomitant reduction of Clardy's share of the proceeds, the trial court adopted the magistrate's allocation of the wrongful death proceeds.
 {¶ 8} On January 2, 2007, appellant's attorneys moved for the payment of their fees and expenses from the wrongful death proceeds. While this motion remained *Page 4 
pending, Clardy and the estate filed an appeal from the trial court's December 19, 2006 entry. Appellant then filed a cross-appeal from that same entry.
 {¶ 9} Upon appellant's motion, this court remanded the matter to the trial court to determine appellant's January 2, 2007 motion for attorney fees. After holding an evidentiary hearing, the trial court issued an entry denying appellant's motion. In this March 27, 2007 entry, the trial court held that Loc. R. 71.8 of the Court of Common Pleas of Franklin County, Probate Division, did not entitle appellant to payment of his attorney fees from the wrongful death proceeds.
 {¶ 10} With the attorney fees issue resolved, this court heard and considered the appeal and cross-appeal. On appeal, Clardy and the estate assigned as error the trial court's determination that appellant had not abandoned Yhasmin. We sustained that assignment of error, concluding that the trial court erred in considering Clardy and appellant's children as a group instead of focusing on Yhasmin individually. In reEstate of Barnett-Clardy, Franklin App. No. 07AP-55, 2007-Ohio-6783, at ¶ 17-19. We remanded the matter to the trial court and ordered it to consider whether appellant "directed any communications atYhasmin, provided care for Yhasmin, and provided maintenance and support as required by law for Yhasmin." Id. at ¶ 17. (Emphasis added.)
 {¶ 11} On cross-appeal, appellant assigned five assignments of error. While we overruled one of these assignments of error, we found that the remainder were moot given our ruling on Clardy and the estate's assignment of error. Id. at ¶ 19-22.
 {¶ 12} On remand, the trial court again considered the evidence and found that appellant had not abandoned Yhasmin. Additionally, in its April 16, 2008 entry, the trial court again determined that appellant deserved only a minimal amount of the wrongful death proceeds due to his limited relationship with Yhasmin. The trial court then allocated *Page 5 
$40,000 of the wrongful death proceeds to Yhasmin's brother and $30,000 to Yhasmin's other sibling and to each of her half-siblings. Of the proceeds remaining, the trial court apportioned 90 percent to Clardy and ten percent to appellant.
 {¶ 13} Appellant now appeals from the April 16, 2008 entry and assigns the following errors:
 [1.] The Order of the trial court approving the wrongful death settlement is void ab initio because Robert Barnett, father of the deceased Yhasmin Barnett-Clardy, was never served with Notice of the Application of Administrator required by Ohio Revised Section 2113.07, Application for Approval of Settlement as required by the Rules of Superintendence 70, Application for Approval of Attorney Fee as required by Local Rule 71.3 and the Rule of Superintendence 71.
 [2.] The Order of the trial court apportioning ten percent of Deborah Clardy's wrongful death proceeds to Robert Barnett violates Ohio Revised Code Section 2125.02 as well as equal protection of laws as provided by the Fourteenth Amendment to the United States Constitution.
 [3.] The classification of the proceeds as one hundred percent wrongful death as opposed to survivor was incorrect as a matter of law.
 [4.] The Order of the trial court denying attorney fees to counsel for Robert Barnett is contrary to the mandates of Loc. R. 71.8.
 {¶ 14} We will address appellant's first and third assignments of error together. By his first assignment of error, appellant argues that the June 21, 2006 entry approving the wrongful death settlement is void because Rinehart failed to serve him with copies of the application for authority to administer Yhasmin's estate, the application for approval of the contingency fee agreement, or the application to approve the settlement of the wrongful death and survivorship claims and the proposed distribution of the settlement proceeds. By his third assignment of error, appellant argues that the trial court erred in allocating all *Page 6 
of the settlement proceeds to the wrongful death claim and none of the proceeds to the survivorship claim.
 {¶ 15} Appellant asserted neither of these arguments in his preceding cross-appeal. "`Where an argument could have been raised on an initial appeal, res judicata dictates that it is inappropriate to consider that same argument on a second appeal following remand.'" State v.Hutton, 100 Ohio St.3d 176, 2003-Ohio-5607, at ¶ 37, quoting State v.D'Ambrosio, 73 Ohio St.3d 141, 143 1995-Ohio-129. See, also, Evanich v.Bridge, 170 Ohio App.3d 653, 2007-Ohio-1349, at ¶ 26-27 (barring a civil litigant from raising an argument in a second appeal that he did not assert in his initial appeal). Thus, the doctrine of res judicata precludes a party who has had his day in court from seeking a second chance to litigate an issue that he could have raised earlier. State v.Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245, at ¶ 18. Application of the doctrine of res judicata in this instance prevents endless litigation of an issue on which a party has already received a full and fair opportunity to be heard. Id.
 {¶ 16} In the case at bar, appellant had the opportunity to assert the arguments underlying his first and third assignments of error in his cross-appeal of the trial court's December 19, 2006 entry. Because appellant did not seize that opportunity, the doctrine of res judicata bars him from asserting those arguments in the current appeal. Accordingly, we overrule appellant's first and third assignments of error.
 {¶ 17} By appellant's second assignment of error, he argues that the trial court's apportionment of the wrongful death proceeds violated R.C. 2125.02 and his constitutional right to equal protection of law. We disagree. *Page 7 
 {¶ 18} Appellant attacks the trial court's application of R.C. 2125.02, but the trial court's authority to apportion the wrongful death proceeds arises from a different statute. According to R.C. 2125.03(A)(1):
 The amount received by a personal representative in an action for wrongful death under sections 2125.01 and 2125.02 of the Revised Code, whether by settlement or otherwise, shall be distributed to the beneficiaries or any one or more of them. The court that appointed the personal representative, except when all the beneficiaries are on an equal degree of consanguinity to the deceased person, shall adjust the share of each beneficiary in a manner that is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries.
Thus, R.C. 2125.03 — not R.C. 2125.02 — empowers a trial court to distribute the proceeds of a wrongful death settlement. Consequently, the trial court could not violate R.C. 2125.02 because that statute did not govern the court's distribution of the wrongful death proceeds. For the same reason, the trial court could not subject appellant to unconstitutionally unequal treatment under R.C. 2125.02.[2]
 {¶ 19} Moreover, even if appellant had challenged the applicable statute, his arguments would still fail. First, R.C. 2125.03(A)(1) does not violate the Equal Protection Clauses of the United States and Ohio Constitutions. The federal and state Equal Protection Clauses place essentially the same limitations on governmental action. Columbia GasTransmission Corp. v. Levin, 117 Ohio St.3d 122, 2008-Ohio-511, at ¶ 90. *Page 8 
Both require that all similarly situated persons be treated alike. Id.;City of Cleburne v. Cleburne Living Ctr. (1985), 473 U.S. 432, 439, 105 S.Ct. 3249.
 {¶ 20} In conducting an equal protection analysis, courts must first examine the classifications created by the statute in question.Burnett v. Motorists Mut. Ins. Co., 118 Ohio St.3d 493, 2008-Ohio-2751, at ¶ 31. Where "a challenged statute does not actually create a classification that treats similarly situated individuals under like circumstances differently, there can be no discrimination to offend equal protection." Id. at ¶ 43. See, also, Conley v. Shearer,64 Ohio St.3d 284, 290, 1992-Ohio-133 ("[W]here there is no classification, there is no discrimination which would offend the Equal Protection Clauses of either the United States or Ohio Constitutions."); In theMatter of B.L., Franklin App. No. 04AP-1108, 2005-Ohio-1151, at ¶ 16 ("A law that operates identically on all people under like circumstances will not give rise to an equal protection violation.").
 {¶ 21} In the case at bar, appellant contends that R.C. 2125.03(A)(1) impermissibly favors his wife over him. Contrary to appellant's argument, R.C. 2125.03(A)(1) does not draw any classification based on sex. Rather, the statute identifies one group — beneficiaries — and requires that each beneficiary receive an equitable share of the wrongful death proceeds. Thus, pursuant to R.C. 2125.03(A)(1), a trial court must treat similarly situated individuals (the beneficiaries) in the same manner (equitably). Whether the beneficiary is a man or a woman, the trial court accords him or her the same consideration under R.C. 2125.03(A)(1). As the statute does not treat male and female beneficiaries differently, appellant's equal protection argument fails.
 {¶ 22} Second, the trial court did not abuse its discretion in apportioning the wrongful death proceeds in accordance with R.C. 2125.03. R.C. 2125.03(A)(1) requires a trial court to distribute wrongful death proceeds in an equitable manner "without regard to *Page 9 
the statute of dissent and distribution, and without regard to any precise mathematical formulae." In re the Estate of Straszheim (Apr. 7, 2000), Montgomery App. No. 18046. Because the statute vests the trial court with broad discretion in apportioning wrongful death proceeds among beneficiaries, appellate courts will not reverse a trial court's apportionment absent an abuse of discretion. Id.; In the Matter of theEstate of Coman, Mahoning App. No. 07-MA-181, 2008-Ohio-2266, at ¶ 17.
 {¶ 23} In the case at bar, the trial court stated that it did not intend its distribution of the wrongful death proceeds to bear any relationship to the amount of grief suffered by Yhasmin's family members, as it could not truly gauge the value of the relationship that each family member had with Yhasmin. The trial court relied upon objective evidence, such as the amount of participation in Yhasmin's life, to determine the amount of each beneficiary's loss. As appellant's interaction with Yhasmin in the year before she died consisted of a handful of conversations, the trial court determined that he had suffered a minimal loss and allocated little of the wrongful death proceeds to him.
 {¶ 24} Appellant argues that R.C. 2125.03(A)(1) requires a trial court to determine the amount of a beneficiary's grief when distributing wrongful death proceeds. To the contrary, R.C. 2125.03(A)(1) requires a trial court to consider a beneficiary's injury and loss. Here, the trial court complied with the statutory mandate when it analyzed the extent to which appellant participated in Yhasmin's life. Logically, family members who spent significant time with Yhasmin suffered a greater loss than those family members who seldom saw or spoke with her.
 {¶ 25} Appellant does not dispute that he played a minimal role in Yhasmin's life. Evidence of appellant's scant contact with his daughter supports the trial court's decision to distribute only a small amount of the wrongful death proceeds to him. Therefore, we *Page 10 
conclude that the trial court did not abuse its discretion in applying R.C. 2125.03(A)(1) to determine appellant's share of the wrongful death proceeds.
 {¶ 26} In sum, appellant's second assignment of error challenges the wrong statute. However, even if appellant had objected to R.C. 2125.03
(instead of R.C. 2125.02), his arguments would still fail. Accordingly, we overrule appellant's second assignment of error.
 {¶ 27} By appellant's fourth assignment of error, he argues that Loc. R. 71.8 entitles him to attorney fees. We disagree.
 {¶ 28} In relevant part, Loc. R. 71.8 states:
 In establishing an estate, guardianship, or dispensing with the appointment of a fiduciary for the primary purpose of settling or resolving a claim, the attorney fees associated with bringing the proceedings before this Court shall be assessed as a portion of the contingent fee, unless otherwise ordered by the Court for good cause shown. The Court may allocate the payment of this fee between the contingent fee and the beneficial interests.
Explaining the rationale behind this rule, the trial court stated that, "Local Rule 71.8 serves to prevent parties from having to pay separately the attorneys who represent an estate in a wrongful death claim as well as the attorneys who assist in establishing the estate in the probate court when both sets of attorneys are necessary in the process to litigate a single claim for wrongful death." (Mar. 27, 2007 Entry at 2.)
 {¶ 29} In the case at bar, appellant's attorneys did not participate in the establishment of Yhasmin's estate. Appellant acknowledges this, but argues that Loc. R. 71.8 entitles him to attorney fees because his attorneys participated in the settlement or resolution of a claim brought on behalf of the estate. Apparently, appellant seeks to rely upon the portion of Loc. R. 71.8 that allows payment of attorney fees from the contingent fee when the attorney participates in "dispensing with the appointment of a fiduciary for *Page 11 
the primary purpose of settling or resolving a claim." Appellant's argument only succeeds if this court ignores the first part of that phrase — the requirement that the attorney contribute to the "dispensing with the appointment of a fiduciary." To disregard such an integral portion of the rule would result in a complete re-writing of the rule. This we cannot do. See Perrysburg Twp. v. City of Rossford,103 Ohio St.3d 79, 2004-Ohio-4362, at ¶ 7 (holding that courts must "give effect to the words used, not to delete words used or to insert words not used" when interpreting statutes).
 {¶ 30} Appellant's attorneys did not participate in the establishment of Yhasmin's estate or the "dispensing with the appointment of a fiduciary for the primary purpose of settling or resolving a claim." Thus, Loc. R. 71.8 does not entitle appellant's attorneys to payment from the contingent fee. Accordingly, we overrule appellant's fourth assignment of error.
 {¶ 31} For the foregoing reasons, we overrule appellant's assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.
Judgment affirmed.
 TYACK and T. BRYANT, JJ., concur.
T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Rinehart subsequently filed an amended application for approval of the settlement and distribution reflecting an increase in litigation expenses. In this amended application, Rinehart deducted the additional expenses from Clardy's share of the settlement proceeds, proposing that she receive $279,866.33.
[2] Tangentially, we note that other courts have recognized that a trial court can draw guidance from R.C. 2125.02(B) in distributing wrongful death proceeds. In the Matter of the Estate of Cochran (Mar. 19, 2001), Clermont App. No. CA2000-05-030; In the Matter of the Estateof Thomas (Apr. 12, 2000), Summit App. No. 19588. R.C. 2125.02(B) sets forth the bases on which a trier of fact may award compensatory damages in a wrongful death action. However, nothing in R.C. 2125.03 requires a trial court to consider any of the R.C. 2125.02(B) bases in apportioning wrongful death proceeds. See In re Estate of Steigerwald, Tuscarawas App. No. 2003-AP-10-0079, 2004-Ohio-3834, at ¶ 19-20 (finding that the trial court did not err when it ignored R.C. 2125.02(B) in allocating wrongful death proceeds). But, see, In the Matter of the Estate ofEngle, Washington App. No. 99CA50, 2000-Ohio-1955 (holding that when distributing wrongful death proceeds, "the trial court should consider the factors outlined in R.C. 2125.02[B]"). *Page 1