[Cite as *In re Estate of John C.*, 2017-Ohio-8648.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of the Estate of [John C.], | : | |
| | : | No. 17AP-398 (Prob. No. 568920) |
| [Donna et al., | : | |
| Appellants]. | : | (REGULAR CALENDAR) |
| | : | |

_____

D E C I S I O N

Rendered on November 21, 2017

_____

**On brief:** *Eugene R. Butler*, and *James R. Leickly*; *Strip Hoppers Leithart McGrath & Terlecky, LPA*, and *Paul W. Leithart, II*, for appellants. **Argued:** *Eugene R. Butler*.

**On brief:** *Bellinger & Donahue*, and *Scott P. Bellinger*, for Montana C. **Argued:** *Scott P. Bellinger*.

**On brief:** *Jay E. Michael*, for Sandra C. **Argued:** *Jay E. Michael*.

_____

APPEAL from the Franklin County Court of Common Pleas
Probate Division

DORRIAN, J.

{¶ 1} Appellants, Donna, Nicole, and Arthur, appeal the May 8, 2017 judgment of the Franklin County Court of Common Pleas, Probate Division, overruling objections to and adopting the December 30, 2016 magistrate's decision. For the following reasons, we affirm.

**I. History**

{¶ 2} The instant matter arises out of the death of John C. ("decedent"). Decedent was a tow truck operator who, on September 22, 2014, was struck and killed by a vehicle while providing assistance to a disabled vehicle. As relevant to the instant

matter, decedent was survived by his daughter, Montana; mother, Sandra; eight siblings including Charles, Arthur, Donna, Carol, Nicole, James, Mildred, and Rose; and grandson, Camden, Montana's son who was conceived prior to decedent's death but born following his death.

{¶ 3}  On October 6, 2014, Montana applied to the trial court to be appointed administrator of decedent's estate for the purpose of pursuing a wrongful death claim.  No other applications for appointment of administrator were made.  On October 6, 2014, the trial court appointed Montana administrator.  On May 12, 2016, Montana filed an application for approval of a fee agreement she entered into with attorneys hired to represent the estate in the wrongful death claim.  On the same date, the trial court approved the fee agreement.

{¶ 4}  On June 9, 2016, Montana filed an application to approve settlement and distribution of wrongful death and survival claims.  On August 30, 2016, Montana filed an amended application to approve settlement and distribution of wrongful death and survival claims.  The insurance company of the driver of the vehicle that struck and killed decedent offered to settle for $25,000.00.  The company that insured the towing company's vehicle that decedent was operating at the time of the incident offered to settle for $450,000.  After accounting for attorney fees and expenses, the net proceeds remaining for distribution equaled $303,522.15.  In the application, Montana requested the proceeds be distributed as follows: $203,522.15 to Montana, and $100,000.00 to Sandra, decedent's mother.  The application also listed decedent's siblings, allocating none of the proceeds from the settlement to them. Montana, James, Sandra, and Mildred each filed signed forms consenting to the settlement and distribution of the wrongful death and survival claims as set forth in the application.

{¶ 5}  On September 2, 2016, a magistrate appointed to hear the matter on behalf of the trial court filed a decision approving the settlement.  No objections to the magistrate's decision were filed.  On September 20, 2016, the trial court filed an entry adopting the magistrate's decision.

{¶ 6}  On November 29, and December 14, 2016, the magistrate conducted a hearing on the application to approve distribution of wrongful death and survival claims.  At the hearing, the following individuals provided testimony regarding their relationship

with decedent and the impact of his death: Nicole, Arthur, Charles, Donna, Carol, Sandra, Mildred, Montana, and Sharmane, decedent's ex-wife and Montana's mother.

{¶ 7} On December 30, 2016, the magistrate filed a decision including findings of fact and conclusions of law. In the decision, the magistrate recommended the settlement proceeds be distributed as follows: $178,522.15 to Montana, $70,000.00 to Sandra, $15,000.00 to Charles, $10,000.00 each to Arthur, Donna, Carol, and Nicole, and nothing to James, Mildred, Rose, and Camden.

{¶ 8} On January 13, 2017, Nicole filed objections to the December 30, 2016 magistrate's decision. On the same date, Donna and Arthur jointly filed objections to the December 30, 2016 magistrate's decision. Also on the same date, Nicole, Donna, and Arthur filed a joint motion for leave of court to supplement their objections to the December 30, 2016 magistrate's decision.

{¶ 9} On January 27, 2017, Carol filed a response to the magistrate's decision, supporting the distribution as determined by the magistrate and reserving the right in the alternative to accept more of the proceeds should the court alter the distribution. On the same date, Sandra and Montana separately filed memoranda contra the January 13, 2017 objections of Nicole, Donna, and Arthur. Also on January 27, 2017, Sandra filed a motion for leave to supplement her memorandum contra.

{¶ 10} On February 6, 2017, Nicole filed a reply memorandum in support of her January 13, 2017 objections. On the same date, Donna and Arthur jointly filed a reply to the January 27, 2017 memoranda contra of Sandra and Montana. On February 28, 2017, the trial court filed an entry granting the January 13, 2017 joint motion of Nicole, Donna, and Arthur for leave of court to supplement their objections to the December 30, 2016 magistrate's decision.

{¶ 11} On March 27, 2017, counsel for Donna and Arthur filed an affidavit, pursuant to Civ.R. 53(D)(3)(b)(iii), to supplement the transcript with portions of the record that were not recorded. On the same date, Donna and Arthur filed supplemental objections to the December 30, 2016 magistrate's decision. Also on March 27, 2017, Nicole filed supplemental objections to the December 30, 2016 magistrate's decision.

{¶ 12} On April 27, 2017, Sandra filed a memorandum contra the supplemental objections of Nicole, Donna, and Arthur. On April 28, 2017, Montana filed a memorandum contra the supplemental objections of Nicole, Donna, and Arthur.

{¶ 13} On May 8, 2017, Donna and Arthur jointly filed a reply to the April 27 and April 28, 2017 memoranda contra of Sandra and Montana. On May 8, 2017, the trial court filed a judgment entry overruling objections and adopting the December 30, 2016 magistrate's decision.

## II. Assignments of Error

{¶ 14} Appellants appeal and assign the following three assignments of error for our review:

> I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN USING THE REBUTTABLE PRESUMPTION OF R.C. 2125.02(A)(1) IN MAKING A DISTRIBUTION UNDER R.C. 2125.03(A) TO MONTANA CARPENTER AND SANDRA CARPENTER.
>
> II. EVEN IF THE REBUTTABLE PRESUMPTION OF R.C. 2125.02(A)(1) IS APPLICABLE TO THE DISTRIBUTIONS UNDER R.C. 2125.03(A) TO MONTANA CARPENTER AND SANDRA CARPENTER, THE EVIDENCE CLEARLY REBUTTED THE PRESUMPTION.
>
> III. THE AWARD OF $10,000 TO EACH OF THE APPELLANT SIBLINGS IS CONTRARY TO LAW AND TO THE WEIGHT OF THE EVIDENCE.

## III. Discussion

{¶ 15} Appellants assert the trial court erred in applying the rebuttable presumption as provided in R.C. 2125.02(A)(1) to the distribution of the wrongful death proceeds. Appellants contend that even if the rebuttable presumption in R.C. 2125.02(A)(1) is applicable to the distribution of the wrongful death proceeds, the evidence rebutted such presumption. Finally, appellants contend the trial court's distribution to appellants was contrary to law and the weight of the evidence.

## A. Applicable Law

{¶ 16} Chapter 2125 of the Ohio Revised Code governs actions for wrongful death. R.C. 2125.02 governs the persons entitled to recover in actions for wrongful death and

damages recoverable through such actions. R.C. 2125.02 provides in pertinent part as follows:

> **(A)**
>
> **(1)** Except as provided in this division, a civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent. A parent who abandoned a minor child who is the decedent shall not receive a benefit in a civil action for wrongful death brought under this division.
>
> **(2)** The jury, or the court if the civil action for wrongful death is not tried to a jury, may award damages authorized by division (B) of this section, as it determines are proportioned to the injury and loss resulting to the beneficiaries described in division (A)(1) of this section by reason of the wrongful death and may award the reasonable funeral and burial expenses incurred as a result of the wrongful death. In its verdict, the jury or court shall set forth separately the amount, if any, awarded for the reasonable funeral and burial expenses incurred as a result of the wrongful death.
>
> **(3)**
>
> **(a)** The date of the decedent's death fixes, subject to division (A)(3)(b)(iii) of this section, the status of all beneficiaries of the civil action for wrongful death for purposes of determining the damages suffered by them and the amount of damages to be awarded. A person who is conceived prior to the decedent's death and who is born alive after the decedent's death is a beneficiary of the action.
>
> **(b)**
>
> **(i)** In determining the amount of damages to be awarded, the jury or court may consider all factors existing at the time of the decedent's death that are relevant to a determination of the damages suffered by reason of the wrongful death.
>
> * * *
>
> **(B)** Compensatory damages may be awarded in a civil action for wrongful death and may include damages for the following:
>
> **(1)** Loss of support from the reasonably expected earning capacity of the decedent;

(2) Loss of services of the decedent;

(3) Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent;

(4) Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death;

(5) The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of the decedent.

{¶ 17} R.C. 2125.03 governs the distribution of proceeds from a wrongful death action brought pursuant to R.C. Chapter 2125. R.C. 2125.03(A)(1) provides in pertinent part as follows:

> The amount received by a personal representative in an action for wrongful death under sections 2125.01 and 2125.02 of the Revised Code, whether by settlement or otherwise, shall be distributed to the beneficiaries or any one or more of them. The court that appointed the personal representative, except when all of the beneficiaries are on an equal degree of consanguinity to the deceased person, shall adjust the share of each beneficiary in a manner that is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries. If all of the beneficiaries are on an equal degree of consanguinity to the deceased person, the beneficiaries may adjust the share of each beneficiary among themselves. If the beneficiaries do not adjust their shares among themselves, the court shall adjust the share of each beneficiary in the same manner as the court adjusts the shares of beneficiaries who are not on an equal degree of consanguinity to the deceased person.

## B. Standard of Review

{¶ 18} "R.C. 2125.03(A)(1) requires a trial court to distribute wrongful death proceeds in an equitable manner 'without regard to the statute of descent and distribution, and without regard to any precise mathematical formulae.' " *In re Estate of Barnett-Clardy*, 10th Dist. No. 08AP-386, 2008-Ohio-6126, ¶ 22, quoting *In re the Estate of Straszheim*, 2d Dist. No. 18046 (Apr. 7, 2000). Therefore, because R.C. 2125.03(A)(1) "vests the trial court with broad discretion in apportioning wrongful death proceeds among beneficiaries, appellate courts will not reverse a trial court's apportionment absent

an abuse of discretion." *Barnett-Clardy* at ¶ 22, citing *Straszheim* and *In the Matter of the Estate of Coman*, 7th Dist. No. 07-MA-181, 2008-Ohio-2266, ¶ 17. However, in considering whether the trial court's decision was in accordance with law, our review is plenary. *Cook v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-852, 2015-Ohio-4966, ¶ 16, citing *Bryant Health Care Ctr., Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 13AP-263, 2014-Ohio-92, ¶ 23.

**C. First Assignment of Error**

{¶ 19} In their first assignment of error, appellants contend the trial court erred in applying the rebuttable presumption as provided in R.C. 2125.02(A)(1) to the distribution of the wrongful death proceeds. The trial court made the following findings:

> The [d]ecedent had a long history of sexually abusing females, including family members. As a result of the [d]ecedent's conduct, Montana's mother chose to protect her daughter and demanded he not contact Montana. Montana therefore did not have a father-daughter relationship for reasons unbeknownst to her while she was a child. Given the unique facts and circumstances of this case, Montana's decision as an adult to not initiate a relationship with her father in the relatively few years before her father was killed[] is not an unreasonable one. Due to the decedent['s] own improper acts, he was largely a stranger to Montana and his entire family. Neither he nor the family made efforts to communicate, or rehabilitate the relationship. This distinction is important to consider when making an equitable adjustment to the shares of the beneficiaries as *Barnett-Clardy* and R.C. 2125.03 require.
>
> Notwithstanding the above and all assertions made by the objectors that Montana suffered no loss, the law presumes that the decedent's spouse, children, and parents have suffered damages. The siblings[] must prove their damages. Montana is presumed to have suffered damages. Although there was minimal contact between Montana and the [d]ecedent, she is the [d]ecedent's only child. As the only child, Montana is entitled to inherit from the [d]ecedent's estate. See R.C. 2125.02(B)(4). Nevertheless, an equitable distribution must be made pursuant to R.C. 2125.03. The Court is required to adjust the share of each beneficiary in a manner that is equitable having due regard for the injury and loss to each resulting from the death and for the age and condition of the beneficiaries.

> Upon a thorough and independent review of this matter and with due consideration of the transcript and the unique situations presented in this case, the Court finds that the Magistrate was correct in awarding Montana Carpenter the largest share of the distribution, in the amount of $178,522.15. The Court does not make this award on the basis of a formula but from equitable considerations. Montana is a young woman with a child who took the initiative to open her father's estate to pursue collection recovery from those accountable for his death. Most significantly is the fact that Montana is the only surviving child of a father who failed to parent her since the age of 7 for reasons due to no fault of her own. The parent-child relationship did not exist not as the result of some failure on Montana's part as the objectors suggest, but due solely to the incomprehensible acts of the decedent. Given the facts and circumstances of this case, this court believes that it is only fair to provide Montana compensation upon the death of her father in order to compensate for what her father failed to provide her, both financially and emotionally, when he was alive.

(Decision at 17-18.)

{¶ 20} In *Barnett-Clardy*, we reviewed the trial court's apportionment of proceeds from a wrongful death settlement.[1] In that case, Barnett-Clardy's father challenged the trial court's application of R.C. 2125.02 to apportion the proceeds. Contrary to the father's contentions, we found that "R.C. 2125.03—not R.C. 2125.02—empowers a trial court to distribute the proceeds of a wrongful death settlement." *Id.* at ¶ 18. However, we noted the following:

> Tangentially, we note that other courts have recognized that a trial court can draw guidance from R.C. 2125.02(B) in distributing wrongful death proceeds. *In the Matter of the Estate of Cochran*, 12th Dist. No. CA2000-05-030 (Mar. 19, 2001); *In the Matter of the Estate of Thomas*, 9th Dist. No. 19588 (Apr. 12, 2000). R.C. 2125.02(B) sets forth the bases on which a trier of fact may award compensatory damages in a wrongful death action. However, nothing in R.C. 2125.03 requires a trial court to consider any of the R.C. 2125.02(B) bases in apportioning wrongful death proceeds. *See In re Estate of Steigerwald*, 5th Dist. No. 2003-AP-10-0079, 2004-Ohio-3834, at ¶ 19-20 (finding that the trial court did not err when it ignored R.C. 2125.02(B) in allocating wrongful death

---

[1] We note this was the second appeal of the underlying matter. *See In re Estate of Barnett-Clardy*, 10th Dist. No. 07AP-55, 2007-Ohio-6783.

proceeds). But, *see, In the Matter of the Estate of Engle*, 4th Dist. No. 99CA50, 2000-Ohio-1955 (holding that when distributing wrongful death proceeds, "the trial court should consider the factors outlined in R.C. 2125.02[B]").

*Id.* at ¶ 18, fn. 2.

{¶ 21} Here, the trial court found that "Montana is presumed to have suffered damages" and, citing R.C. 2125.02(B)(4), stated that "Montana is entitled to inherit from [d]ecedent's estate." (Decision at 17.) However, the court also stated that "[n]evertheless, an equitable distribution must be made pursuant to R.C. 2125.03. The Court is required to adjust the share of each beneficiary in a manner that is equitable having due regard for the injury and loss to each resulting from the death and for the age and condition of the beneficiaries." (Decision at 17-18.) Furthermore, the court stated that "R.C. 2125.02 does not govern the court's distribution of the wrongful death proceeds." (Decision at 16.) Thus, contrary to appellants' contentions, the trial court did not err in referring to the rebuttable presumption in R.C. 2125.02, as the decision reveals that the court applied the principles of equity, pursuant to R.C. 2125.03, in making the distribution.

{¶ 22} Accordingly, we overrule appellants' first assignment of error.

## D. Second Assignment of Error

{¶ 23} In their second assignment of error, appellants assert the trial court erred in its distribution of the proceeds with regard to Montana and Sandra because they lacked a relationship with decedent.

{¶ 24} In the trial court, Montana testified that, upon learning of decedent's death, she felt "[l]ike a part of me was now gone," even though she had not seen him since she was seven or eight years old. (Tr. Vol. II at 205.) Montana stated that she had met with decedent's sister Mildred and found that they both suffered a loss resulting from decedent's death. When asked whether meeting with Mildred "helped [to] heal those wounds" resulting from the loss of decedent, Montana replied: "Nothing probably will ever heal them fully. It will just help the healing process." (Tr. Vol. II at 213.) Montana additionally testified that she had visited the cemetery where decedent was buried.

{¶ 25} Montana admitted that she did not have a relationship with decedent from the time she was seven or eight years old. However, the record is also clear that the lack of relationship between Montana and decedent was not attributable to any fault on the part

of Montana. Sharmane testified that decedent sexually assaulted Montana's sister and, as a result, she told decedent to stay away from Montana. Montana did not know the true reason for decedent's absence from her life until she was an adult. Decedent never attempted to make contact with Montana following their separation.

{¶ 26} Sandra testified that she was deeply affected by the loss of decedent. She stated that she visited his gravesite, still talked to him, and was distressed by the manner in which decedent was killed. Furthermore, Sandra testified that decedent had provided some services to her. Sandra testified that she witnessed decedent sexually assault his younger sister. Sandra informed Arthur that decedent was stealing money from Arthur's business. Sandra stated that her relationship with decedent suffered as a result of his sexual misconduct and because she informed Arthur of decedent's theft.

{¶ 27} In evaluating the nature of the relationship between Montana and decedent, the trial court stated that "[g]iven the unique facts and circumstances of this case, Montana's decision as an adult to not initiate a relationship with her father in the relatively few years before her father was killed, is not an unreasonable one. Due to the decedent[']s own improper acts, he was largely a stranger to Montana and his entire family." (Decision at 17.) Furthermore, in making its award to Montana, the trial court stated that "[t]he Court does not make this award on the basis of a formula but from equitable considerations." (Decision at 18.)

{¶ 28} With regard to Sandra, the trial court found that "[t]he lack of a normal parent-child relationship between the decedent and Sandra [is] a result of the decedent's own sexual abuse actions which strained that relationship." (Decision at 20.) Nevertheless, the court found that "[d]espite these challenges, Sandra and the decedent maintained a mother-child relationship, which could not have been easy given his abuse directed to his sister." (Decision at 20.) The court found that "the evidence presented at [the] hearing clearly exhibit[s] that Sandra suffered mental anguish upon the loss of her son." (Decision at 20.)

{¶ 29} Appellants contend the trial court erred in considering the reasons for Montana and Sandra's lack of relationship with decedent. R.C. 2125.03, however, explicitly provides for the trial court to make an "equitable" distribution with "due regard for the injury and loss to each beneficiary resulting from the death and for the age and

condition of the beneficiaries."  Given Montana and Sandra's ample testimony regarding the nature of their loss resulting from decedent's death, we find that it was within the "broad discretion" of the trial court to consider the surrounding facts and circumstances "in apportioning wrongful death proceeds among beneficiaries."  *Barnett-Clardy* at ¶ 22.  Although in *Barnett-Clardy* we found the trial court did not err in basing its distribution on the amount of participation in the decedent's life, nothing in that decision prevents the trial court from considering extenuating circumstances, such as those present in this case, when making its equitable determination pursuant to R.C. 2125.03.  Therefore, upon a thorough review of the record, we hold the trial court did not err in its distribution of settlement proceeds with regard to Montana and Sandra.

{¶ 30} Accordingly, we overrule appellants' second assignment of error.

**E.  Third Assignment of Error**

{¶ 31} In their third assignment of error, appellants contend that the evidence did not support the award to Donna, Arthur, and Nicole.  Specifically, appellants contend that the trial court failed to base its distribution on the amount of time the beneficiaries spent with decedent.  As discussed in our resolution of appellants' second assignment of error, the trial court possessed the discretion to consider the surrounding facts and circumstances when making its equitable determination pursuant to R.C. 2125.03.  Upon a thorough review of the record, we conclude the trial court did not abuse its discretion in its distribution to Donna, Arthur, and Nicole.

{¶ 32} Accordingly, we overrule appellants' third assignment of error.

**IV.  Conclusion**

{¶ 33} Having overruled appellants' three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

KLATT and HORTON, JJ., concur.

———————————